STUART, Justice.[1]
Cavalier Manufacturing, Inc. (“Cavalier”), appeals the order of the Wilcox Circuit Court denying Cavalier’s motion to alter, amend, or vacate an arbitration award entered in favor of Janie Gant. We affirm.
I.
On March 25, 2003, Gant purchased a mobile home manufactured by Cavalier (“the mobile home”) from Demopolis Home Center, L.L.C. (“DHC”), for $47,379. At the time of purchase, Gant and representatives of Cavalier and DHC executed an alternative-dispute-resolution agreement in which they agreed to arbitrate any disputes that might arise among them stemming from Gant’s purchase of the mobile home. The mobile home was also covered by a manufacturer’s warranty issued by Cavalier that likewise contained a provision requiring Gant to submit to arbitration any disputes that might arise between her and Cavalier relating to the mobile home. That warranty also generally provided, subject to certain exclusions, that Cavalier would repair or replace any defect in material or workmanship that became evident within a 1-year period after purchase, so long as Cavalier was pro *764 vided with written notice of the defect within 15 days of the expiration of the warranty period.
Gant was not satisfied with the manner in which DHC delivered and installed the mobile home on her property. After she moved into the mobile home, she began noticing various problems with it. It is undisputed that Gant notified DHC of those problems and that DHC made multiple efforts to satisfy Gant; it is disputed whether Gant ever notified Cavalier of her problems with the mobile home. It appears that contractors hired by DHC were able to remedy to Gant’s satisfaction some of the problems; however, on January 26, 2007, Gant sued Cavalier and DHC, asserting various fraud and breach-of-warranty claims stemming from her purchase of the allegedly defective mobile home.
On March 2, 2007, Cavalier moved the trial court to dismiss Gant’s complaint or, in the alternative, to compel arbitration pursuant to the Federal Arbitration Act (“the FAA”), 9 U.S.C. § 1 et seq., based on the alternative-dispute-resolution agreement Gant had executed with Cavalier and DHC. On April 25, 2007, the trial court granted Cavalier’s motion, stayed the case, and ordered “the parties” to submit their dispute to arbitration. Gant thereafter initiated an arbitration claim with the American Arbitration Association, and the parties prepared their cases for arbitration. On July 17 and 18, 2008, an arbitration hearing was held in Camden; part of the proceedings included a tour of the mobile home, which, for all that appears, Gant continued to live in. On October 17, 2008, the arbitrator issued an interim award in favor of Gant, awarding her $45,550 on her breach-of-express-warranty claim, plus an additional sum to be determined for attorney fees based on Cavalier’s and DHC’s violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. (“the Magnuson-Moss Act”). See Forest River, Inc. v. Posten, 847 So.2d 957, 961 (Ala.Civ.App.2002) (“[Section] 2310(d)(2) of the Magnuson-Moss Act authorizes the award of an attorney fee to prevailing plaintiffs in warranty actions at the discretion of the trial judge.”). In the award, the arbitrator made the following findings of fact:
“The evidence, specifically including but not limited to the arbitrator’s view of [Gant’s] home, makes very clear that the mobile home was not set up and/or finished properly. For example, there are substantial gaps between a number of the doors and the home itself. In addition, more than a preponderance of the evidence shows that substantial amounts of water came into the home via the ridge cap.
“The evidence is overwhelming that the home has sustained substantial damage caused by the presence of water and/or water vapor inside the exterior walls of the home. The arbitrator’s view of damage, specifically including but not limited to seeing rotted wood adjacent to the rear doors of the home, was consistent with the testimony and report of Michael Gurtler, one of [Gant’s] experts. Indeed, at one point at the right side of the left rear door (viewed from the inside) the arbitrator was convinced that if he pushed harder with his finger, he would put a hole through the floor. The arbitrator decided not to test his suspicion in the interest of not making a bad situation worse.
“The suggestion offered that the water damage near the rear doors was caused by water getting beneath the exterior roofing near the ridge cap and moving down between the interior and exterior roofs is inconsistent with the evidence. Although there is some staining above the outside of the left rear door (viewed now from the outside) consistent with water having flowed from the space between the roofs, there is no *765 such staining above the other rear door noted above, where the rotting appears to be significantly greater.
“The ridge cap is curled and deformed along much if not all of its length. The suggestion offered by one or another of the witnesses that the deformation was caused by violent storms that passed through the area is not persuasive. If that were the cause, one would expect other areas of the roof to have been affected as well as the ridge cap, but the roof other than the ridge cap appears largely undamaged. In short, physical facts support Gurtler’s determination that the attic is not sufficiently well ventilated and that situation contributed to the presence of water vapor in the home.”
The arbitrator also explained the award in favor of Gant on her breach-of-express-warranty claim as follows:
“[Gant’s] claims include breach of express warranty against Cavalier and [DHC]. It is undisputed that Cavalier issues a warranty covering every home it sells.... Cavalier contends that it is entitled to judgment on [Gant’s] claims under the express warranty because she did not provide Cavalier with the notice required under the warranty and/or Alabama law prior to filing her complaint and did not provide it with an opportunity to cure the alleged defects prior to suit being filed. With the exception of a letter dated May 15, 2003, and an inspection list with comments dated May ■17, 2003, both of which [Gant] signed, it is undisputed that [Gant] did not communicate with any representative of Cavalier. ...
“The evidence, specifically including the testimonies of [Cavalier’s service manager Jerry] Dudley and Shawn Wilson, former manager of [DHC], persuades the arbitrator that there existed a course of dealing whereby [DHC] received complaints of problems from customers to whom it had sold homes built by Cavalier and that when those problems related to warranty issues passed them on to Cavalier who then took action. The evidence persuades the arbitrator that Cavalier took action on warranty items related to [Gant’s] home based on that course of dealing without seeking written or oral confirmation from her. The arbitrator finds that Cavalier waived the requirement for written notice set out in its manufacturer’s limited warranty. Because Cavalier waived its right to notice of warranty claims from [Gant], the arbitrator must deny Cavalier’s opportunity to cure argument. The evidence is clear that [Gant] complained to [DHC] of items covered by the manufacturer’s limited warranty and that several of those items were not corrected.
“Cavalier’s argument that [Gant] did not provide notice of alleged defects identified by her experts prior to filing this action is not persuasive. [Gant] provided those reports shortly after the investigations. Moreover, many of the defects noted were not knowable until completion of those inspections.”
(Footnotes omitted.) Following the entry of the arbitrator’s interim award, Gant submitted evidence to the arbitrator supporting her claim for attorney fees and Cavalier filed its objections to that claim.
On December 1, 2008, DHC, out of an abundance of caution, filed a premature notice of appeal to this Court seeking review of the arbitrator’s award; that appeal was subsequently dismissed by this Court on DHC’s motion after DHC indicated that it had reached a settlement with Gant (case no. 1080283).[2] On December 30, *766 2008, Cavalier moved the trial court to alter, amend, or vacate the arbitration award. Gant opposed the motion, and, on March 6, 2009, the trial court denied Cavalier’s motion.
On March 17, 2009, the arbitrator entered his final award, confirming the $45,550 award previously made to Gant and also awarding an additional $72,732 in attorney fees and expenses. On April 16, 2009, Cavalier filed the arbitrator’s final award with the trial court and filed a new notice of appeal. On May 14, 2009, Cavalier moved the trial court to alter, amend, or vacate the arbitrator’s final award; Gant thereafter filed a brief opposing Cavalier’s motion. On August 4, 2009, the trial court denied Cavalier’s motion, and the case then proceeded on appeal in accordance with Cavalier’s April 16, 2009, notice of appeal. See New Addition Club, Inc. v. Vaughn, 903 So.2d 68, 71 (Ala.2004) (“Rule 4(a)(5), Ala. R.App. P., provides that a notice of appeal filed before the disposition of all postjudgment motions shall be held in abeyance until any remaining post-judgment motions are disposed of.”).[3]
II.
Cavalier argues that the trial court erred by confirming the arbitration award in favor of Gant and that, pursuant to the FAA, the trial court’s judgment confirming the award should be reversed.
“In R.P. Industries, Inc. v. S & M Equipment Co., 896 So.2d 460 (2004), this Court reviewed the trial court’s order granting a motion to confirm an arbitration award and denying the opposing party’s motion to vacate that award. We stated:
“ “Where parties, as in this case, have agreed that disputes should go to arbitration, the role of the courts in reviewing the arbitration award is limited. Transit Casualty Co. v. Trenwick Reinsurance Co., 659 F.Supp. 1346 (S.D.N.Y.1987), affirmed, 841 F.2d 1117 (2d Cir.1988); Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577 (2d Cir. 1967). On motions to confirm or to vacate an award, it is not the function of courts to agree or disagree with the reasoning of the arbitrators. Application of States Marine Corp. of Delaware, 127 F.Supp. 943 (S.D.N.Y.1954). Courts are only to ascertain whether there exists one of the specific grounds for vacation of an award. Saxis Steamship Co. A court cannot set aside the arbitration award just because it disagrees with it; a policy allowing it to do so would undermine the federal policy of encouraging the settlement of disputes by arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Virgin Islands Nursing Association’s Bargaining Unit v. Schneider, 668 F.2d 221 (3d Cir.1981). An award should be vacated only where the party attacking the award clearly establishes one of the grounds specified [in 9 U.S.C. § 10]. Catz American Co. v. Pearl Grange Fruit *767 Exchange, Inc., 292 F.Supp. 549 (S.D.N.Y.1968).” ’
“896 So.2d at 464 (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376, 1380-81 (Ala.1992)). The standard by which an appellate court reviews a trial court’s order confirming an arbitration award under the Federal Arbitration Act is that questions of law are reviewed de novo and findings of fact are reviewed only for clear error. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir.2002).”
Hereford v. D.R. Horton, Inc., 13 So.3d 375, 378 (Ala.2009).
III.
Cavalier summarizes its argument to this Court as follows in its brief:
“In summary, the arbitrator exceeded his authority and/or was guilty of misconduct and/or misbehavior under 9 U.S.C. § 10, and/or acted in manifest disregard of the law for each of the following reasons. Each ground supplies an independent basis to vacate the award of the arbitrator.
“A. The arbitrator imposed liability upon Cavalier in the absence of the proper notice required under the warranty, under Alabama law, and under federal law. The arbitrator acknowledged that he was not even suggesting Cavalier received proper notice of Ms. Gant’s warranty claims.
“B. The arbitrator held Cavalier liable for defects not reported to Cavalier within the one-year warranty term. “C. The arbitrator imposed liability when Cavalier had not been provided a reasonable opportunity to cure.
“D. The arbitrator ignored Alabama law in finding that a ‘course of dealing existed between Ms. Gant and Cavalier that excused Ms. Gant from the requirements of notice and an opportunity to cure within the warranty term.
“E. The arbitrator ignored Alabama law in finding that there was a ‘course of performance’ that altered the terms of the warranty.
“F. The arbitrator ignored Alabama law in finding that Cavalier had waived the requirements in the warranty when there was no evidence that Cavalier ever intentionally relinquished its right to written notice from Ms. Gant.
“G. The arbitrator ignored Alabama law and held a savings clause, which was not applicable to the case, was required to be signed by Ms. Gant for Cavalier to enforce the warranty.
“H. The arbitrator ignored well-established federal preemption law and imposed liability upon Cavalier for conduct that was expressly permitted under federal law.
“I. The arbitrator entered an award of damages when there was a complete lack of any evidence of the alleged cost to repair or replace the alleged defective attic and plumbing ventilation.
“J. The arbitrator ignored Alabama law and entered an award of attorneys’ fees and costs to [Gant].”
Cavalier’s brief, pp. 32-33 (emphasis in original; citations to record omitted).
As an initial matter, we note that when Cavalier discusses each of these individual grounds in further detail in its brief, it frames each argument in terms of whether the award returned by the arbitrator demonstrates a manifest disregard of the law. That is, with regard to each of the 10 grounds Cavalier has identified, Cavalier seeks to establish that the relevant legal principles were well defined and were called to the arbitrator’s attention; yet, Cavalier argues, the arbitrator neverthe *768 less chose to ignore those identified principles. This approach is essentially consistent with those cases in which this Court has discussed manifest disregard of the law as a basis for vacating an arbitration award. See, e.g., Jenks v. Harris, 990 So.2d 878, 885 (Ala.2008) (“Furthermore, ‘a party seeking to vacate an arbitration award on the basis of manifest disregard of the law must establish that “(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.” ’ ” (quoting Birmingham, News Co. v. Horn, 901 So.2d 27, 50 (Ala.2004), quoting in turn Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir.1998) (footnote omitted))).
Of course, in Hereford, this Court held that manifest disregard of the law was no longer a valid basis for vacating an arbitration award under the FAA, stating:
“Under the Supreme Court’s decision in Hall Street AssociatesL L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008) ], ... manifest disregard of the law is no longer an independent and proper basis under the Federal Arbitration Act for vacating, modifying, or correcting an arbitrator’s award. In light of the fact that the Federal Arbitration Act is federal law, and in light of the Supremacy Clause of the Constitution of the United States, Art. VI, we hereby overrule our earlier statement in Birmingham News that manifest disregard of the law is a ground for vacating, modifying, or correcting an arbitrator’s award under the Federal Arbitration Act, and we also overrule any such language in our other cases construing federal arbitration law.”
13 So.3d at 380-81. However, in a footnote we recognized that the Supreme Court in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), had not fully excised the concept of manifest disregard of the law from the body of arbitration law:
“The Supreme Court noted that the [first] use of the phrase ‘manifest disregard’ in Wilko [v. Swan, 346 U.S. 427, 436-37 (1953),] was particularly vague and that it could have had several possible meanings. The Court surmised that the use of the phrase ‘manifest disregard,’ instead of intending to create ‘a new ground for review,’ may merely have ‘referred to the § 10 grounds collectively, rather than adding to them.... Or, as some courts have thought, “manifest disregard” may have been shorthand for § 10(a)(3) or § 10(a)(4), authorizing vacatur when the arbitrators were “guilty of misconduct” or “exceeded their powers.” ’ Hall Street Associates, 552 U.S. at 585, 128 S.Ct. at 1404. Relying on these latter two possible meanings, some courts have held that ‘manifest disregard’ survives as a judicial gloss on the specific grounds for vacatur listed in § 10 of the Federal Arbitration Act. See Stolt-Nielsen SA v. AnimalFeeds Int’l Corp., 548 F.3d 85, 94 (2d Cir.2008) (citing with approval decisions of other courts that have held that ‘manifest disregard’ survives as a gloss on the § 10(a) grounds of the Federal Arbitration Act). We do not address whether manifest disregard of the law remains as a judicial gloss on the grounds specified in § 10(a) of the Federal Arbitration Act or is merely ‘shorthand for § 10(a)(3) or § 10(a)(4).’ We simply note that by the express language of the Supreme Court of the United States the text of the Federal Arbitration Act ‘compels a reading of the § 10 and § 11 categories [of relief] as exclusive.’ 552 U.S. at 586, 128 S.Ct. at 1404.”
13 So.3d at 380 n. 1.
Post -Hereford, this Court has consistently indicated that courts must enforce *769 awards entered in arbitration proceedings conducted pursuant to the FAA unless the challenging party establishes that vacatur is appropriate based on one of the following grounds enumerated in § 10(a) of the FAA:
“1) where the award was procured by corruption, fraud, or undue means;
“2) where there was evident partiality or corruption in the arbitrators, or either of them;
“8) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
“4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.”
See, e.g., Raymond James Fin. Sens., Inc. v. Honea, 55 So.3d 1161, 1166 (Ala.2010), and Smallwood v. Holiday Dev., LLC, 38 So.3d 718, 720 (Ala.2009). Cavalier now asks this Court to adopt the viewpoint of courts such as the United States Court of Appeals for the Second Circuit in Stolk-Nielsen SA v. AnimalFeeds International Corp., 548 F.3d 85, 94 (2d Cir.2008), cited in Hereford, and to use the two-part manifest-disregard-of-the-law test used in cases such as Jenks and Birmingham News as a mechanism to determine whether vacatur is appropriate based on a § 10(a) ground. Thus, Cavalier argues, if there is evidence indicating that the arbitrator exhibited a manifest disregard of the law, the resulting award is necessarily the product of corruption, fraud, undue means, partiality, misconduct, misbehavior, and/or the arbitrator’s exceeding his or her powers, and the award must accordingly be vacated.
We decline Cavalier’s invitation to give further life to the concept of manifest disregard of the law. The Supreme Court of the United States has made it clear, and this Court has recognized, that under the FAA the § 10 grounds are the exclusive avenue for seeking vacatur of an arbitration award. As the United States Court of Appeals for the Fifth Circuit stated in Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir.2009), the effect of Hall Street Associates is essentially that the phrase “manifest disregard of the law,” “as a term of legal art, is no longer useful in actions to vacate arbitration awards.”[4] We agree; the § 10 grounds are sufficiently clear that it is unnecessary to view them through a “manifest disregard” lens. Thus, a party arguing to this Court that a trial court erred in denying a motion to vacate or modify an arbitration award must frame its arguments by specific reference to the § 10 grounds.[5] See also *770 Horton Homes, Inc. v. Shaner, 999 So.2d 462, 467 n. 2 (Ala.2008) (“[A] party desiring judicial review of an arbitration award in a proceeding subject to the [FAA] is limited to arguments based on those grounds enumerated in 9 U.S.C. § 10.”).
In this case, Cavalier failed to make such specific reference or argument, citing no caselaw in which this Court has discussed arbitrator misconduct, misbehavior, or what it means for an arbitrator to exceed his or her powers. Rather, Cavalier has essentially done exactly what the appellant in Hereford did — made solely a manifest-disregard-of-the-law argument— the one difference being that Cavalier prefaced the substance of its argument by arguing that “ ‘manifest disregard of the law is simply a shorthand expression for ‘misconduct,’ ‘misbehavior,’ and/or ‘exceeded their powers.’ ” Cavalier’s brief, p. 19. The appellant in Hereford was unsuccessful. See Hereford, 13 So.3d at 381 (“Hereford has raised manifest disregard of the law as the only ground on which she seeks to have the arbitrator’s award vacated. Because manifest disregard of the law, by itself, is not a valid ground for relief from the arbitrator’s award and because Hereford has not argued that this Court should vacate the decision of the arbitrator on any of the grounds specified in § 10(a) of the Federal Arbitration Act, she has not demonstrated that she is entitled to relief from the trial court’s decision confirming the arbitrator’s decision.”). Cavalier is likewise unsuccessful because its general assertion that the arbitrator exceeded his authority or was guilty of misconduct or misbehavior is not supported by citations to authority; rather, all of Cavalier’s citations to authority are dedicated to demonstrating that the arbitrator failed to correctly apply the law and, in fact, exhibited a manifest disregard of the law. “ ‘Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues, for it is neither the Court’s duty nor its function to perform all the legal research for an appellant.’ ” Welch v. Hill, 608 So.2d 727, 728 (Ala.1992) (quoting Sea Calm Shipping Co., S.A v. Cooks, 565 So.2d 212, 216 (Ala.1990) (citations omitted)).
We further note, however, that there is no misconduct, misbehavior, or exceeding of powers by the arbitrator simply because an arbitrator might have decided an issue incorrectly.[6] With regard to misconduct and misbehavior, § 10(a)(3) of the FAA provides for vacatur of an arbitration award
“where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced....”
This context indicates that the misconduct and misbehavior that merits a vacatur must relate to whether a party was afforded a fundamentally fair hearing. See, e.g., Robbins v. Day, 954 F.2d 679, 685 (11th Cir.1992) (“A federal court may vacate an arbitrator’s award under 9 U.S.C. § 10(a)(3) only if the arbitrator’s refusal to hear pertinent and material evidence prejudices the rights of the parties and denies them a fair hearing.”). There is no evidence indicating or even an allegation in the instant case that Cavalier was not af *771 forded a full and fair arbitration hearing at which to present its evidence and make its argument; § 10(a)(3) accordingly provides no basis for vacating the arbitrator’s award in favor of Gant.
Moreover, in Birmingham, News, this Court explained § 10(a)(4) and the exceeded-powers ground for vacatur of an arbitration award, stating:
“In general, the nature of the ‘exceeded powers’ ground is described as follows:
“ ‘We have consistently accorded the narrowest reading to section 10(d) [currently section 10(a)(4) ], especially when it has been invoked in the context of the arbitrators’ alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance. Our inquiry under § 10(a)(1) thus focuses on whether the arbitrators had the power, based on the parties’ submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.’
“DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2nd Cir.1997) (internal quotation marks and citations omitted).”
901 So.2d at 47 (emphasis added). The arbitration agreements in this case were broadly written and, without dispute, encompass the issues presented in this case. We will not conclude that an arbitrator exceeded his or her authority simply because he or she may have decided an issue incorrectly; accordingly, § 10(a)(4) provides no relief to Cavalier in this case.
IV.
When Gant purchased the Cavalier mobile home from DHC, the parties — Gant, Cavalier, and DHC — executed an agreement agreeing to arbitrate any disputes that arose related to the transaction. A dispute did arise and, pursuant to that agreement, the dispute was submitted to arbitration, at the conclusion of which an award was entered in favor of Gant. Cavalier subsequently sought judicial review of that award, the gravamen of its argument being that the arbitrator’s conclusions were contrary to the applicable law. However, on motions to vacate an arbitration award, it is not the function of courts to agree or disagree with the legal reasoning of the arbitrator — courts are to determine only whether the party challenging the award has clearly established that vacatur is justified by one of the grounds specified in § 10 of the FAA. Hereford, 13 So.3d at 378. Cavalier has not done so. Accordingly, the judgment of the trial court is hereby affirmed.
AFFIRMED.
BOLIN, PARKER, MURDOCK, SHAW, MAIN, AVISE, and BRYAN, JJ„ concur.
MOORE, C.J., concurs in the result.

. This case was mistakenly placed on this Court's administrative docket in September 2011 and was not assigned to Justice Stuart until October 22, 2013. We regret the delay in the issuance of a decision in this appeal.

. At that time, Rule 71B, Ala. R. Civ. P., which now governs the time limits and proce *766 dure for appealing an arbitration award, had not yet been adopted, and there was some confusion regarding the procedure for seeking judicial review of an arbitration award. See, e.g., Horton Homes, Inc. v. Shaner, 999 So.2d 462, 464 (Ala.2008), in which this Court recognized that " 'the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15, Ala.Code 1975, is far from clear.' " (Quoting Jehlcs v. Harris, 990 So.2d 878, 882 (Ala.2008).)

. DHC went out of business in October 2003 but remained active in the litigation until it reached a settlement with Gant after the arbitrator’s award was entered. It is not a party to this appeal.

. In an Alabama case, the United States Court of Appeals for the Eleventh Circuit aligned itself with the Fifth Circuit’s decision in Citigroup Global Markets. See Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1324 (11th Cir.2010) ("We hold that our judicially-created bases for vacatur are no longer valid in light of Hall Street. In so holding, we agree with the Fifth Circuit that the categorical language of Hall Street compels such a conclusion.”). However, we recognize that some other federal circuit courts have continued to employ a manifest-disregard-of-the-law analysis, considering it to be a shorthand way of encompassing some of or all the § 10 grounds. See, e.g., Stolt-Nielsen (second circuit), Coffee Beanery, Ltd. v. WW, L.L.C., 300 Fed.App'x 415 (6th Cir.2008) (not selected for publication in the Federal Reporter), and Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277 (9th Cir.2009).

. Cavalier has also argued that the arbitration award returned in favor of Gant should be vacated because, Cavalier argues, the award is irrational, is contrary to public policy, is arbitrary and capricious, and lacks any factual support. These arguments clearly have no relation to § 10, and we accordingly grant them no consideration. See Frazier, 604 F.3d *770 at 1322-24 (holding that appellant’s "additional arguments that the [arbitration] award was arbitrary and capricious [and] in violation of public policy” are no longer valid in light of Hall Street Associates).

. It is ultimately unnecessary for us to consider whether the legal conclusions made by the arbitrator in this case were correct, and we express no opinion on that point.